In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-1963

AMERICAN BANK,

*Plaintiff-Appellant*,

*v.*

CITY OF MENASHA, *et al.*,

*Defendants-Appellees*.

————————

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 4:09-cv-0064-TLS-APR—**Theresa L. Springmann**, *Judge*.

————————

ARGUED OCTOBER 26, 2010—DECIDED NOVEMBER 29, 2010

————————

Before POSNER, FLAUM, and SYKES, *Circuit Judges*.

POSNER, *Circuit Judge*. The Private Securities Litigation Reform Act of 1995 provides, with an immaterial exception, that "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss" a suit governed by the Act. 15 U.S.C. § 78u-4(b)(3)(B). The Securities Litigation Uniform Standards Act of 1998 (SLUSA) amended the Private Securities Litigation

Reform Act (PSLRA) to authorize the district court to "stay discovery proceedings in any private action in a State court, as necessary in aid of its jurisdiction, or to protect or effectuate its judgments, in an action subject to a stay of discovery pursuant to [section 78u-4(b)(3)(B), quoted above]." 15 U.S.C. § 78u-4(b)(3)(D). The question presented by this appeal is whether this provision of SLUSA authorizes the district court to enjoin a private securities plaintiff from gaining access to records that a state's public-records law entitles members of the public to see and copy at their own expense.

The City of Menasha, Wisconsin issued bond anticipation notes (in effect, short-term bonds) to finance the conversion of an electric power plant owned by it to a steam-generating plant that would burn a cheaper form of coal, emit less pollution, and provide steam to nearby paper mills. But the project went way over budget—costing $40 million rather than the planned $12.7 million—and eventually the City defaulted on the bonds to the tune of more than $20 million. Menasha Utilities, "Executive Summary—Business Plan for Menasha Power Plant Conversion," June 22, 2006, www.menasha-utilities.com/media/MU_-_Business_Issue_6-22-06.pdf (visited Nov. 1, 2010); Rick Romell, "City of Menasha Sued After Defaulting on Bonds," *Journal Sentinel Online*, Sept. 28, 2009, www.jsonline.com/business/62342647.html (visited Nov. 1, 2010). Owners of the bonds, including a Wisconsin bank named American Bank, filed a class-action suit against the City, charging that it had violated federal securities law by failing to disclose to prospective buyers of the bonds material information about the conver-

sion project. The suit named "Menasha Utilities" and "Menasha Steam Utility" as additional defendants, but they seem merely to be names of subdivisions of the city's government rather than entities distinct from the City, so we can ignore them.

American Bank was a named plaintiff in the class action suit, and less than two weeks after the suit was filed it submitted a request to the City, pursuant to Wisconsin's Public Records Law, Wis. Stat. §§ 19.31-.39, to inspect a large number of records, specified in the request, relating to the conversion project. (In an example of silly, and indeed unprofessional, advocacy, Menasha's brief neither cites nor mentions the public-records law, as if there were no legal basis for American Bank's insisting on compliance with the request and as if therefore the stay granted by the district court did not preempt a state law.) Although required to respond to the request "without delay," § 19.35(4)(a), the City dragged its heels, so American Bank obtained from a Wisconsin state court a mandamus commanding the City to comply with the request. The records sought were—the City does not deny—public records within the meaning of the public records law, Wis. Stat. § 19.32(2), and therefore available to any "requester," including one whose interest in the records stems from his involvement in litigation. *Cavey v. Walrath*, 598 N.W.2d 240, 243 n. 4 (Wis. App. 1999); *State ex rel. Lank v. Rzentkowski*, 416 N.W.2d 635, 637-38 (Wis. App. 1987).

The City responded to American Bank's request and to the mandamus order not by producing the documents, as

state law required and the state court had ordered, but instead by asking the district court in which the securities suit was pending for a stay under subsection 4(b)(3)(D) of SLUSA. The court granted the stay and American Bank has appealed.

The City argues that the stay is not appealable because it is just a discovery order. For reasons explained in *Reise v. Board of Regents of University of Wisconsin System*, 957 F.2d 293, 295 (7th Cir. 1992), discovery orders, being interlocutory, generally are not appealable in the federal court system, *Allendale Mutual Auto Ins. Co. v. Bull Data Systems, Inc.*, 32 F.3d 1175, 1177 (7th Cir. 1994); *Goodman v. Harris County*, 443 F.3d 464, 468 (5th Cir. 2006); *International Products Corp. v. Koons,* 325 F.2d 403, 406 (2d Cir. 1963) (Friendly, J.), even though they look like injunctions—which are appealable though interlocutory, 28 U.S.C. § 1292(a)(1)—because they are orders to do rather than to pay. There are exceptions to the rule barring the immediate appeal of a discovery order, as when the order "resolves an important issue completely separate from the merits of the action" and is therefore appealable under the collateral-order doctrine, *Goodman v. Harris County*, *supra*, 443 F.3d at 468, or when a petitioner for mandamus proves "irreparable harm . . . and a clear right to the relief sought [the vacating of the discovery order]." *In re Sandahl,* 980 F.2d 1118, 1119 (7th Cir. 1992); see also *United States ex rel. Chandler v. Cook County*, 277 F.3d 969, 981 (7th Cir. 2002). In discussing the scope of the collateral-order doctrine, the Supreme Court said recently that the critical question is "whether deferring review until final judgment so imperils the interest as

to justify the cost of allowing immediate appeal of the entire class of relevant orders." *Mohawk Industries, Inc. v. Carpenter*, 130 S. Ct. 599, 606 (2009). Wisconsin considers the availability of public records to be sufficiently important to justify the grant of mandamus to compel immediate production of requested documents—a right infringed by the stay granted to Menasha.

Maybe a further exception to the final-judgment rule should be carved for a discovery order that has the effect of preempting a state law, because such an order is a slap in federalism's face. *Johnson v. Fankell*, 520 U.S. 911, 922 (1997); *City of Joliet v. New West, L.P.*, 562 F.3d 830, 836-37 (7th Cir. 2008). The argument for the exception gains support from the echo in SLUSA's stay provision of language in both the All Writs Act, 28 U.S.C. § 1651, and the Anti-Injunction Act, 28 U.S.C. § 2283 ("as necessary in aid of its jurisdiction, or to protect or effectuate its judgments"), since the "writs" issued under those acts are appealable as injunctions. *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1200-01 (7th Cir. 1996); *Negrete v. Allianz Life Ins. Co.*, 523 F.3d 1091, 1096-97 (9th Cir. 2008); *Burr & Forman v. Blair*, 470 F.3d 1019, 1027-28 (11th Cir. 2006); *In re BankAmerica Corp. Securities Litigation*, 263 F.3d 795, 800 (8th Cir. 2001); *Georgine v. AmChem Products, Inc.*, 83 F.3d 610, 623-24 (3d Cir. 1996). The bank argues that inspecting public records pursuant to a state statute is not discovery within the meaning of the stay provision, and thus a stay of such inspection is an injunction against enforcement of a state law and appealable as such—as in *United States v. Board of Education*, 11 F.3d 668, 671-72 (7th Cir. 1993); *Olde Discount Corp. v. Tupman*, 1 F.3d 202,

206 (3d Cir. 1993), and countless other cases—without need for a further exception to the final-judgment rule.

So this may be a case in which the merits of the appeal and whether we have jurisdiction over it are inseparable. See, e.g., *Kerns v. United States*, 585 F.3d 187, 195 (4th Cir. 2009); *Shoaf v. Department of Agriculture*, 260 F.3d 1336, 1340-41 (Fed. Cir. 2001); *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1190 (2d Cir. 1996). If the City's interpretation of federal law is correct, American Bank is engaged in discovery and so cannot appeal unless it can invoke one of the exceptions to the rule against interlocutory appeal of discovery orders. If American Bank's interpretation is right, it is certain that the stay is not the stay of a discovery order and so can only be an injunction, and only a stay of discovery is authorized by SLUSA. We think American Bank *is* right, and that resolves both jurisdiction and merits.

The word "discovery" is not a synonym for investigation. Much of the information-gathering that litigants do is not "discovery" as the term is understood in the law. See, e.g., Fed. R. Civ. P. 26(b); Fed. R. Civ. P. 34. They talk to their clients and to witnesses, read newspaper accounts, study the records of previous judicial or administrative proceedings, troll the Web—they do all these things and more without being thought to be conducting "discovery." A plaintiff's lawyer might study corporate records of the defendant that were freely accessible online and no one would think the lawyer was engaged in "discovery." Corporate documents required by the SEC to be filed are available online, see www.sec.gov/edgar.shtml

(visited Nov. 8, 2010), and those documents are often at the heart of the precomplaint investigation required by the Private Securities Law Reform Act.

The case law uniformly refuses to define requests for access to federal or state public records under public-records laws (such as the federal Freedom of Information Act and state public records laws—including Wisconsin's) as discovery demands, even when as in this case the request is made for the purpose of obtaining information to aid in a litigation and is worded much like a discovery demand. *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 and n. 23 (1978); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 143 n. 10 (1975); *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 998 F.2d 157, 167-68 (3d Cir. 1993); *Maycock v. Nelson*, 938 F.2d 1006, 1008 (9th Cir. 1991); *RSR Corp. v. Brock*, 764 F.2d 355, 367-68 (5th Cir. 1985); *Cavey v. Walrath, supra*, 598 N.W.2d at 243 n. 4; *State ex rel. Lank v. Rzentkowski, supra*, 416 N.W.2d at 637-38; *Kentner v. Indiana Public Employers' Plan, Inc.*, 852 N.E.2d 565, 574-75 (Ind. App. 2006). The Delaware General Corporation Law, for example, entitles shareholders to inspect corporate books and records for "any proper purpose." Del. Code Ann. tit. 8, § 220(b), and the Delaware Supreme Court has ruled that requests made under this provision are not discovery demands. E.g., *Saito v. McKesson HBOC, Inc.*, 806 A.2d 113, 114-15 (Del. 2002). That is all that American Bank did here when it requested access to public (not private, not confidential, not privileged, not hidden) records of its opponent.

Of course Congress in SLUSA might have been using the word "discovery" in some broad lay sense rather than in

the conventional legal sense, and then we would be obliged to give the word its lay meaning, which might encompass American Bank's request. "Loose construction" is not an oxymoron; it is a time-honored interpretive approach. See, e.g., Oliver Wendell Holmes, "John Marshall" (1901), in *The Essential Holmes* 206, 207 (Richard A. Posner ed. 1992). But we would have to be given a reason, grounded in statutory purpose or practical consequences, for an interpretation that goes against the semantic grain, and the City is unable to give us any; its arguments are purely semantic—in a case in which semantics (the conventional legal meaning of "discovery") favors the other side.

The purpose of authorizing stays of state-court discovery relating to federal securities litigation is similar to that of the enhanced pleading requirements of the Private Securities Litigation Reform Act at issue in the *Tellabs* litigation, see *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320-21 (2007), and on remand, 513 F.3d 702, 705-06 (7th Cir. 2008); see also *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 740-42 (1975); *Schleicher v. Wendt*, 618 F.3d 679, 686 (7th Cir. 2010); *Cozzarelli v. Inspire Pharmaceuticals Inc.*, 549 F.3d 618, 623-24 (4th Cir. 2008), and of the Supreme Court's recent *Iqbal* and *Twombly* decisions, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50, 1953 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557-59 (2007); see also *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009); *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). It is to prevent settlement extortion—using discovery to impose asymmetric costs on defendants in order to force a settlement advantageous to the plaintiff regardless of the merits of his suit.

*Thorogood v. Sears, Roebuck & Co.*, No. 10-2407, 2010 WL 4283637 at *6-8 (7th Cir. Nov. 2, 2010). That purpose could be thwarted if the plaintiff in a federal securities suit, by filing a parallel suit in state court under state securities law against the same defendant that he had sued in federal court, could use state discovery procedure to impose the very burdens on the defendant that the PSLRA, before the amendment made by SLUSA authorizing stays of discovery under state law, sought to lift by the automatic stay; the amendment closed a loophole. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81-82 (2006); *Gavin v. AT&T Corp.*, 464 F.3d 634, 640 (7th Cir. 2006); *Instituto De Provision Militar v. Merrill Lynch*, 546 F.3d 1340, 1344-45 (11th Cir. 2008).

But the concern with settlement extortion that underlies the original and amended provisions does not justify the interpretation urged by Menasha. For as is typical of public-records statutes, the costs associated with responding to requests for access to public records under Wisconsin's public-records law are charged to the person making the request. Wis. Stat. § 19.35(3); City of Menasha, Public Records Notice and Policy 3,www.cityofmenasha-wi.gov/content/departments/-city_clerk/documents/PUBLIC%20RECORDS%20NOTIC E.pdf (visited Nov. 1, 2010). Although the statute and city regulation don't specify that the charge for production of public records includes the time of the staff in respond-ing to a request (labor costs), the statute allows the public-records offices to charge fees reflecting the "actual, neces-sary and direct cost of reproduction and transcription of the record," Wis. Stat. § 19.35(3)(a), and both a recent

case, *WIREdata, Inc. v. Village of Sussex*, 751 N.W.2d 736, 762 (Wis. 2008), and an older opinion of the Attorney General of Wisconsin, 72 *Opinions of the Attorney General of the State of Wisconsin* 150-51 (Sept. 16, 1983), make clear that the fees can include labor expenses. In any event there is no expense to the defendant, as he doesn't have to rummage through his files to respond to a demand for information—at least *qua* defendant; it is happenstance that in this case the custodian of the records and the defendant are one and the same—the City of Menasha. The City shouldn't be allowed to use its dual status to gain an advantage over other defendants in private securities litigation. And while it's true that if American Bank uses any of the information it gleans from the records to oppose the motion that the City has filed to dismiss the class action suit the City's lawyers will have to analyze the information, so will American Bank's lawyers; the analysis costs are symmetrical.

The City acknowledges that it couldn't refuse a newspaper's request for the records, and the newspaper would be free to publish them. Yet it claims a right to an even broader stay than the district court granted it—to a stay that would forbid American Bank to suggest to a newspaper that it request and publish the records, or even hint at such a suggestion by telling a reporter that there might be some interesting stuff in the public-records office about the City's misbegotten power-plant conversion project. And so another objection to the City's position in this case is that it would invite satellite litigation over efforts to circumvent a stay and even raise questions under the First Amendment.

It would also create a precedent of unmanageable scope. Suppose a newspaper reporter had requested and obtained records of the City's conversion fiasco but had not published anything. Could American Bank's lawyers ask him about what he had found in his search? Or would that be "discovery" too? What if the lawyers search Google under "City of Menasha securities litigation." Is that "discovery"—for if they do that, they will find articles that contain information about the litigation that they might find useful. See, e.g., "Menasha Educates Residents on Vote over WPPI's Energy Purchase of Menasha Utilities Assets," Mar. 21, 2010, www.postcrescent.com/article/20100321/APC0101/-3210497/Menasha-educates-residents-on-vote-over-WPPI-Energy-purchase-of-Menasha-Utilities-assets (visited Oct. 27, 2010). In rejecting an attempt to "exempt private and citizen litigants from the right to disclosure of public records if the materials sought potentially relate to a matter under litigation between the parties," *State ex rel. Lank v. Rzentkowski*, *supra*, 416 N.W.2d at 637-38, explained that "circumvention of the statute under such an interpretation could be accomplished with ease and impunity. Nothing in [the] argument would preclude a person, not a party to the underlying litigation, from rightfully demanding the materials and then turning them over to the litigants who otherwise would be denied them. The interpretation . . . would encourage surreptitious circumventing of the statute. We are hesitant to adopt an interpretation which reduces a law to such unenforceable stature and holds it out to ridicule rather than respect."

The City's position is not only wrong; if one looks to the future it is futile. The City acknowledges that had American Bank requested the records *before* filing suit, there would have been no ground for refusing the request. So the only effect (beyond this case) of our affirming the district court would be that in the future private securities plaintiffs would file their public-records requests a few weeks or months before rather than (as in this case) a few weeks after filing suit.

Of course if states create discovery procedures but call them "requests for public records," perhaps by deeming all records in the files of private corporations public, this would not defeat a motion for a stay. Substance trumps form. But in this case substance and form coincide.

The judgment granting a stay is

REVERSED.